Hoffheimer, J.
This was an action for damages for breach of contract. By agreement between the parties a jury was waived and the cause submitted to the court on the evidence and the law.
The contract (coal contract) is in writing and its terms are evidenced by a letter from plaintiffs to defendants under date of July 13, 1899, the question being as to who first broke the contract.
The entire contention in my judgment hinges on the proper construction of the contract in the first place, and in the second *432 place, if the construction, contended for by the plaintiffs be correct, whether the contract was subject to a certain custom affecting delivery as claimed by the defendants, and further, if there were any irregularities on defendants ’ part with reference to carrying out its part of the contract, whether such irregularities were waived by the plaintiffs.
In my opinion the contract is an absolute one to deliver 1000 tons of coal during the period mentioned as ordered by the plaintiffs. The time of delivery is absolutely at the plaintiffs’ option.
Such being the nature of the contract, before plaintiffs would be entitled to recover they must show that they did and performed all things required of them under the contract.
The evidence shows conclusively (see correspondence) that plaintiffs repeatedly ordered coal from defendants (with perhaps an exception during the month of August, and in view of defendants’ delays and the construction placed on the contract by the court this would' be immaterial); that defendants time and again delayed to fill plaintiffs’ orders as they were received, offering a variety of excuses for their failure.
The defendants in argument contend that if any delays were occasioned they were due to lack of car equipment, and that by the custom of coal dealers the contract must be read subject to this condition, though the contract itself is silent in that regard.
This contention can not be sustained in this cause for several reasons. In the first place in order to establish a custom of the kind indicated the proof must show it was certain in its terms and uniform in its operation. 12 Ency. of Law & Pro., Section 1035.
The proof fails to show the custom claimed obtained at Kankakee, plaintiffs’ place of business. At the best the testimony upon the proposition is conflicting, and the rule is that where the evidence is uncertain and contradictory a custom can not be considered established. 12 Ency. of Law & Pro., Section 1039.
And it is also settled, that where it is sought to engraft a custom upon a written contract it must be proven that the parties sought to be bound by the custom had knowledge of it, unless the custom is so notorious as that all parties sought to be affected *433 will be conclusively presumed to-have knowledge of it. 12 Ency. of Law & Pro., Sections 1041-42-43, and eases cited.
The uncontradicted evidence is that plaintiff was absolutely unaware of any such custom and the evidence is not of a character that would warrant me in saying that the plaintiffs’ knowledge could be conclusively presumed.
In the next place, even if a custom had been established by defendants, it would still be of no avail in view of the evidence, for the correspondence shows that the excuses offered for delay in delivery or for non-delivery were not at all times based on lack of help at the mines and alleged advances in freight rates.
There is no testimony to prove a custom excusing non-delivery because of lack of help at the mines. Furthermore, it is clear that there were delays that could not be excused on that ground.
An advance in freight rates was likewise no excuse for delay or non-delivery, for the contract established a certain and fixed price for the merchandise f. o. h. tracks Kankakee, and consequently plaintiffs were not affected by such excuses.
As for the lack of car equipment; while there may have been a scarcity of cars, the evidence shows that notwithstanding such scarcity defendants were still able to ship and as a matter of fact did ship during this very time coal to other customers at Chicago. If they were able to secure cars to ship to Chicago, it would seem that they were in a position to care for plaintiffs at Kankakee. Furthermore, if- there was a scarcity of ears that fact in itself would be no excuse for non-delivery or for delay, as mere inability to perform a contract owing to a failure of the means on which they relied for performance will not excuse non-performance. Mechem on Sales, Section 1103.
Finally, defendants in argument contend that even if there were irregularities on its part they were waived by the plaintiffs, but upon this point I am constrained to hold that the evidence does not prove that plaintiffs, with knowledge of their rights, intentionally waived performance as contemplated by the contract, or that it was so mutually understood and agreed, all of which I understand is essential to establish a waiver.
Plaintiffs then appear to have performed their part of the contract, unless it can be said that their failure to remit for the *434 October account by November 20 was a breach on their part, but shipping of coal by the defendants was a condition precedent to payment by plaintiffs, and the evidence shows that defendants failed to ship as ordered, and I am of opinion that the breaches of the contract made by the defendants justified the plaintiffs in writing the letter of December 20, and also in protecting themselves in the manner as stated therein.
. Plaintiffs in view of the facts did not commit any breach in withholding the amount due on the October contract, especially in view of defendants ’ letter of November 15, wherein defendants ask plaintiffs if they would agree to stand the raise in freight rates. Plaintiffs immediately (November 16) replied that they would not, and that they relied on their contract, and then they wanted to know what defendants intended to do. On this particular point it will be noticed defendants in their subsequent letters remained silent, .thus giving plaintiffs ample grounds to believe, that there was a renunciation (Mechera of Sales, Section 1803 and Section 1090). And this, too, notwithstanding the letters of defendants (subsequent to plaintiffs’ letters of November 16) promising to'fill orders, for as stated it will be observed nothing is said by defendants as to their proposition to have plaintiffs stand the raise in freight rates.
- It is further, claimed by defendants that plaintiffs are not entitled to recover the amount claimed because there is a failure to establish the market price of ‘ ‘ mine run ’ ’ coal during the months in question. •
In the first place, the terms of the contract in my judgment did not require that the 1000 tons be made up of any one of the three named kinds of coal. The option was with the plaintiffs, and it was for defendants to, deliver the kind of coal “as ordered.” Any other construction it seems to me would require plaintiffs to make -up their 1000 tons in equal proportions of the three ¡kinds named' — in other words, average their orders..
• That strikes me as a very strained construction of this contract in .view of the circumstances, and it would be contrary to the intent of the parties as found in their acts and the circumstances.
Stanley Matthews, for plaintiffs.
Galvin & Galvin and E. J. Tracy, for defendants.
I think plaintiffs have established by a preponderance of the testimony that the market price'of “mine run coal” for the period in question was the same as egg and lump. This being so, and as the plaintiffs were not in default and as defendants violated the contract^ plaintiffs are entitled to recover the difference between the contract price and the market price at Kankakee, which, less the amount retainéd by them for the October account, is shown to be $691.37. Judgment for plaintiffs in said amount.